## APPEAL OF JACOB THALL.
### [BENJAMIN C. CHILSON v. JACOB THALL.]

APPEAL FROM THE DECREE OF THE COURT OF COMMON PLEAS OF BRADFORD COUNTY, IN EQUITY.

Argued March 13, 1888—Decided March 26, 1888.

An old man conveyed his farm to his son-in-law receiving as part consideration a bond conditioned for his support during life. Afterward he filed a bill in equity to cancel the conveyance on the ground of fraud and threats, but failed and was decreed to pay the costs.

Judgment having been entered on the bond, a scire facias averring breaches of the bond was then issued, on the trial of which a settlement was made by an agreement commuting the support protected by the bond to a certain annual cash payment and certain supplies in kind to be paid and delivered by the obligee.

Afterward the son-in-law entered judgment on his decree for costs, and, an execution issued to collect being returned nulla bona, filed a bill in equity to have the cash payments under the agreement referred to applied in discharge of his claim for costs.

A decree pro confesso for want of a plea, answer or demurrer having

been entered, the defendant moved to vacate it, presenting an answer responsive to the bill. The court, holding the answer insufficient, refused to vacate the decree pro confesso and made a final decree granting the prayers of the bill.

On an appeal from said final decree: *Held*,

1. That, the plaintiff still having the title to the home and farm of his father-in-law, conveyed to him in consideration of his promise of support, and the substituted allowance appearing as the only protection of his grantor from want, a court of equity was not the place to seek the relief prayed for.

Before GORDON, C. J., PAXSON, STERRETT, CLARK and WILLIAMS, JJ.; TRUNKEY and GREEN, JJ., absent.

No. 323 January Term 1887, Sup. Ct.; court below, No. 1 February Term 1887, C. P. in equity.

On December 10, 1885, Benjamin C. Chilson filed a bill in equity against Jacob Thall, in which it was set forth, in substance:

That defendant held a judgment against the plaintiff for $2,000 entered July 1, 1884, on a bond dated June 17, 1880, to No. 418 September Term 1884; that by a certain agreement dated November 18, 1884, filed to the number and term of the judgment, in lieu of all the things to be done by the defendant under the conditions in said bond mentioned, "your said orator, among other things, became bound to pay said Thall $37.50 every three months from the said 18th day of November, 1884, so long as said Thall should live, and also to furnish and deliver to him each year so long as he should live, 15 bushels of potatoes, 15 bushels of wheat, 15 bushels of buckwheat and 15 bushels of corn in the ear, and to give said Thall the use of the house and garden where he resides, during his life, and the use of a cow and horse, and to furnish at said Thall's door, wood, prepared for use, sufficient for one stove;" and said judgment was to remain as a security for said payments and the performance of said duties.

That on November 12, 1883, in an equity proceeding wherein Thall was plaintiff and Chilson defendant, to No. 6 May Term 1881, the plaintiff (defendant in said proceeding) had obtained a decree against the defendant (plaintiff in said proceeding) for the payment of the master's fee and costs in the same, being $400.23.

That on November 16, 1885, the plaintiff caused judgment to be entered on said decree for $405.58 (including the prothonotary's costs, $5.35), and had issued an execution thereon on which the return of nulla bona had been made; that the plaintiff had no definite nor actual knowledge of any property out of which he could collect his demand against the defendant, except from the judgment held against the plaintiff by the defendant, but the plaintiff believed that the defendant had in his possession or control ready money more than sufficient to pay the plaintiff's claim: Praying,

1. That from the quarterly payments arising out of the said judgment to No. 418 September Term 1884, there should be deducted from time to time enough money to pay and satisfy said decree and judgment thereon, to wit, $405.58.   2. That the defendant be enjoined from collecting the quarterly cash payments accruing to him on said judgment, till the plaintiff's judgment be fully paid.   3. General relief.

On February 23, 1886, a rule having been returned served on one of defendant's counsel, and no plea, answer or demurrer having been filed, on motion of the plaintiff's counsel, an order was entered that the bill be taken pro confesso.   On March 30th, on motion of plaintiff's counsel a rule was granted to show cause why the order entering the decree pro confesso should not be revoked, the affidavits filed showing serious and continued illness of the defendant from about February 1st, and ignorance of the issuance of the rule to plead, etc.

On argument of the rule, an answer by the defendant to the plaintiff's bill was presented, which set forth, in substance:

That the bond mentioned in the bill was the principal consideration upon which the defendant had conveyed his farm of about 110, acres in Franklin and Burlington townships, worth about $5,000 to the plaintiff, on June 17, 1880; that the defendant was then 70 years of age, infirm in health and weak in mind, and the plaintiff was his son-in-law, on whom he had depended for assistance in his business; that whilst in such weak condition, he had been persuaded in part by entreaties and in part by threats, to make the deed for said farm to the plaintiff, and subsequently after a partial recovery of his health he had filed the bill in equity to No. 6 May Term 1881, to

have the conveyance set aside, was unable to sustain it and a decree was entered against him for the costs.

That afterwards, the plaintiff having failed to perform the conditions of said bond, the defendant had issued a scire facias thereon, suggesting breaches of said conditions; that on the trial of the scire facias, at the suggestion of the court and the advice of respondent's counsel, the cause was settled in open court by an agreement intended as the respondent believed to be a final settlement of all matters and to include all claims of the plaintiff and defendant against each other.

That the defendant had no property subject to levy or execution, and no means of support whatever, save the amounts and articles payable and deliverable to him under said agreement; that he did not think it to be true that the plaintiff had any good reason to believe he had in his possession or control, ready money, or any money whatever; on the contrary, in January, 1886, the plaintiff had charged the defendant and his daughter Angeline with larceny, and without any probable cause had procured a search warrant to issue and a search to be made upon defendant's premises, resulting in the finding of two old, worn out drag teeth and a worn out hoe; that the defendant had accompanied the officer executing the search warrant, and had himself searched in bureaus, drawers and beds, and every other place where he might imagine money was concealed, and found none.

That the defendant, by reason of his age, bodily weakness and diseases, was unable to sustain himself upon the property agreed to be furnished in kind under said agreement, and the whole amount of cash payable was absolutely necessary for his maintenance.

Further, with like effect as if by demurrer, that the legal remedy of the complainant was full, adequate and complete.

On May 3, 1886, the court, MORROW, P. J., filed the following opinion and order:

Upon the affidavits filed, there is perhaps enough to make the rule absolute so as to allow an answer to be put in, but the answer itself is insufficient. Take from it all irrelevant matter, and there is no ground to refuse the decree setting off one judgment against another. It may be filed, so that the record

will show what it contains, but the rule to strike off the decree is discharged.

A formal and final decree was then entered granting relief in accordance with the prayers of the bill. Thereupon the defendant took this appeal, specifying in substance that the court erred:

1. In holding and treating the answer of the defendant as insufficient.

2. In assuming jurisdiction of the cause.

3. In entering the final decree against the defendant.

*Mr. John F. Sanderson* (with him *Mr. Charles M. Hall*), for the appellant:

1. There was a full, complete and adequate remedy at law. The plaintiff, if not estopped by the agreement of November 18, 1884, could have issued execution, and, in default of personal property on which to levy, an execution attachment making himself the garnishee. Hence, a court of equity had no jurisdiction: Frisbee's App., 88 Pa. 146; Christie's App., 85 Pa. 463; Grubb's App., 90 Pa. 228; Richard's App., 100 Pa. 51; Long's App., 92 Pa. 177. The mere fact that the legal remedy has failed, does not justify the interposition of a court of equity: Rees v. Watertown, 19 Wall. 121; Heine v. Levee Commissioners, 19 Wall. 658; insolvency is not a ground for equitable interference: Heilman v. Canal Co., 37 Pa. 100.

2. The court will not allow one judgment to be set off against another when it would be contrary to equity and good conscience; only where it will infringe upon no other right of equal grade: Windle v. Moore, 10 W. N. 387; Ramsey's App., 2 W. 228; Prouty v. Hudson, 5 Clark 314; Bagg v. Jefferson, 10 Wend. 615; Ryan v. Casey, 1 Pears. 153. But instead of setting off judgment against judgment the court has set off a judgment against an annuity, which accrued by the express act and agreement of the plaintiff in the bill; an annuity, too, which is of the highest class, an annuity for maintenance.

*Mr. James Wood*, for the appellee:

It is seen that the answer nowhere denies the averments of the bill, except the averment that plaintiff had good reason to believe the defendant had ready money in his possession

or control.  It is distinctly admitted that defendant had a judgment against plaintiff for $2,000 and plaintiff a judgment against defendant for $405.58.  That one of these judgments may be set off against the other is established by Ramsey's App., 2 W. 228, and many cases since.  No authorities have been cited requiring the court to save enough of the debtor's property to support him during life, when his own imprudent conduct has put it within reach of execution.

OPINION, MR. JUSTICE WILLIAMS:

The appellant is a man of advanced age and the appellee is his son-in-law.  In 1880, the appellant feeling the infirmities of age, made a conveyance of his farm to his son-in-law Chilson, and Chilson undertook to support Thall and his wife during their natural lives.  Within a year or two Thall felt that he had made a mistake and sought by bill in equity to procure the cancellation of his conveyance on the ground that it had been obtained by the stress of undue influence.  He failed to show undue influence, his bill was dismissed, and a decree was made against him for costs amounting to over $400.  About the time of the making of this decree a settlement was made between the parties by the terms of which Chilson was to pay Thall $150 per annum in quarterly payments of $37.50 each, in lieu of the support originally provided for.  Chilson afterwards issued execution for costs which was returned nulla bona, and then presented the bill in this case asking the court to set off his judgment for costs upon the quarterly payments falling due to Thall until the whole sum with interest and costs of the present proceeding were fully paid.  Thall failed to answer within the time limited, and the bill was taken pro confesso, and a decree entered in accordance with the prayer of the bill.  Soon after an application was made to open the decree pro confesso based upon affidavits of the sickness of Thall at the time and an answer was produced and leave asked to file it.  The learned judge of the court below held that "upon the affidavits filed there is perhaps enough to make the rule absolute so as to allow an answer to be put in, but the answer itself is insufficient;" he, however, allowed the answer to be filed "so that the record will show what it contains," but refused to disturb the decree.

To determine the sufficiency of the answer it is necessary to look into the bill. That states the payments falling due to Thall, the judgment for costs against him, that execution had issued and been returned nulla bona, that "your orator has no definite or actual knowledge of any property out of which he can collect his said demand," except the quarterly payments falling due to Thall; and concludes with an averment that " your orator has good reason to believe and does believe" that Thall has ready money in his possession or control, but that " your orator has no certain or definite knowledge in reference thereto." Then follows a prayer for the set-off and for an injunction against Thall to restrain him from collecting the quarterly payments till the judgment for costs is fully paid.

The answer admits the existence of the judgment against Thall for costs, and of the judgment in his favor against Chilson to secure the payment of the quarterly allowance for his support, denies the possession of any property subject to levy and sale on execution, or any means of support other than the quarterly allowance payable by Chilson. It also denies that the plaintiff had any good reason to believe that he had money in his possession or control, and adds, " nor have I any such money." The answer contains much matter that is irrelevant and impertinent, which the court would have struck out on a proper application, but after the answer is thus purged, it contains a distinct, positive, and pertinent reply to each allegation in the bill upon which the prayer for relief rests. After the default in making the answer in time was accounted for, the decree pro confesso should have been vacated and the answer filed.

But we have the bill and answer now before us and we are at a loss to understand how the plaintiff is entitled upon the admitted facts of this case to the relief prayed for. The slender allowance to be paid quarterly to Thall is the only provision for his support in his old age. Even the plaintiff is unable to tell us of anything else that stands between his wife's father and actual want. At law he would be entitled to the benefit of the exemption laws, and could insist upon having these quarterly payments appraised, if an effort was made to take them from him by attachment as they fell due.

What the plaintiff could not do at law, therefore, by way of

stripping this old man of his support, he comes into a court of equity and asks a chancellor to do. He still holds the title to the home and farm of his father-in-law which was conveyed to him in consideration of his promise of support. The quarterly allowance of $37.50 has been substituted in lieu of the support originally contracted for. The plaintiff now asks in a court of equity to take this support away from an old man eighty years of age, enfeebled by disease, and with no other visible means of support, in order to pay his judgment for costs which he cannot collect at law. A court of equity is not the place in which to seek relief of this sort.

> Decree reversed at cost of appellee, and bill dismissed.